HARTNESS *v.* NIX, et al.

Nov. 16, 1953

No. 38891 43 Adv. S. 10 67 So. 2d 718

*Barnett, Jones & Montgomery,* Jackson, for appellant.

752

*L. W. Brown,* Starkville ; *B. H. Loving,* West Point, for appellees.

LOTTERHOS, J.

This litigation is concerned with an attack upon the validity of a deed executed by appellant on May 11, 1950. A brief summary of certain salient and uncontroverted facts, at the outset, will simplify a consideration of the questions of law and fact which are raised.

Harris D. Hartness, appellant, a single man, was an inmate of state mental institutions most of the time from 1931 to 1948. He was the owner of considerable properties, which were handled by his brother, Homer M. Hartness, as guardian. In December, 1948, appellant was paroled to the custody of another brother, Lawrence B. Hartness, and at that time began to reside in this brother's home in Starkville. Mrs. Blake Hartness was the wife of Lawrence B. Hartness, and they had three daughters—Willena Blake Hartness, Mrs. Mary Elizabeth Hartness Nix, and Mrs. Martha Hartness Wade. By decree of December 8, 1949, the chancery court found that appellant was then sane and competent, and directed his guardian to deliver his property to him. In the first part of 1950, after his property had been turned over to him,

appellant purchased and began to operate several small sandwich shops in Columbus.

On May 5, 1950, appellant was arrested on a criminal charge of an offense committed on Elizabeth Stapp, a young woman, in Columbus. He was released on bail, and returned to his brother's home in Starkville. On May 11, 1950, appellant executed a deed, reciting a consideration of $10 and love and affection, to his three nieces, Willena Hartness, Mrs. Nix, and Mrs. Wade, conveying to them his real estate, consisting of 260 acres of farm land in Oktibbeha County and a house and lot in Starkville. This deed was filed for record on May 12, 1950. Thereafter, on February 14, 1951, Mrs. Wade, one of the grantees in said deed, conveyed her interest in the above mentioned realty to her sisters, the other two grantees in said deed, Willena Hartness and Mrs. Nix.

With these basic facts in mind, we outline the pleadings and proceedings in this suit as follows. On February 23, 1951, Mrs. Nix and Willena Hartness, appellees, filed their bill of complaint against Harris Hartness, appellant, exhibiting the two deeds referred to, charging that Harris Hartness was denying their title and interfering with their possession, and praying that he be restrained from interfering with their rights and possession, and that their title be confirmed. Harris Hartness answered, and filed a cross-bill, setting up that Mrs. Blake Hartness, the mother of appellees, and her attorney, L. W. Brown, had conspired to relieve Harris Hartness of all his property and money, that they had obtained large sums from him, that there was a confidential relationship between him and them, that they advised and insisted that he execute the deed of May 11, 1950, upon the claim that this was necessary as protection against a possible law suit by Elizabeth Stapp, and that they procured the execution of said deed by undue influence, coercion, and misrepresentation. The cross-bill prayed the cancellation of the two deeds referred to in the original bill, or,

in the alternative, that the cross-defendants, the two nieces, be held as trustees for the cross-complainant. Further details of the answer and cross-bill are not necessary for an understanding of this case.

The trial of the case was quite extended, as the testimony and proceedings amount to three large volumes on this appeal. At the conclusion, the chancellor found for the complainants and cross-defendants; granted them an injunction as prayed; confirmed their title to the land; and dismissed the cross-bill. From this decree, Harris D. Hartness appeals.

The main argument on behalf of appellant is outlined as follows: (1) That appellant conveyed his land without consideration with the intention of preventing its being subjected to a claim for damages threatened by Elizabeth Stapp, that there was in fact no such claim, that no creditors' rights were involved, and that equity will enforce the resulting trust and compel a reconveyance; (2) that appellees obtained from appellant land which does not equitably belong to them and which they cannot in good conscience retain, and that equity will impose a constructive trust to restore the property to appellant; and (3) that the decree was against the overwhelming weight of the evidence.

After a careful examination of the record, we have concluded that all of these contentions are disposed of by the chancellor's findings of fact as reflected in his opinion and decree. In other words, the facts control this case, and we do not reach a consideration of the points of law which are argued. A detailed summary of the evidence would necessarily be very long, and would serve no useful purpose, so that it seems sufficient to state the result of the proof, in short. The testimony on behalf of appellant supports the allegations of the answer and cross-bill, shows large sums of money paid to Mrs. Blake Hartness and L. W. Brown by appellant in the first part of 1950, and, considered alone, makes a damaging case

against the persons named above. It does not show any participation in any wrongful conduct on the part of appellees. But, on the other side, the testimony of Mrs. Hartness and L. W. Brown, with other evidence adduced by appellees, contradicts and refutes, in detail, appellant's proof. Full explanation is made of the various payments to Mrs. Hartness and Brown. This proof shows that the deed of May 11, 1950, was drafted in April, at the request of appellant, who took it with him and later executed it on May 11, of his own volition, and pursuant to his previously expressed desire. If the testimony for appellees be accepted as true, as it was by the chancellor, it removes every factual basis for appellant's claim to relief. We think that the chancellor was justified in his findings on this record of sharply conflicting evidence.

Although the mental competency of appellant was not impugned in this case, as a ground of attack on the deed, the chancellor, having in mind the past history of appellant, appointed a guardian ad litem prior to the trial, and required of him an investigation and report on appellant's mental condition. The guardian's report was that in his opinion, if appellant be considered as a fully sane and competent person in December, 1949 (when the court adjudicated his sanity), his actions since that time do not show insanity or incompetency, though they may indicate a lack of discretion. Also, the chancellor, in his opinion at the close of the trial, stated that he had closely observed the appellant throughout the proceedings, and concluded that appellant was "fully competent."

Two other points are argued by appellant, these being with reference to rulings on objections to evidence. One alleged error concerned the rejection of certain testimony of L. W. Brown on cross-examination with respect to his opinion of the competency of appellant. ██ ██ In view of the fact that the chancellor was fully aware of appellant's past history (shown in detail in the record) and made a

close personal observation of appellant with the past experience in mind, we do not feel that this ruling, whether or not erroneous, was prejudicial. The same conclusion applies to the other alleged erroneous ruling, whereby L. W. Brown was permitted to express his opinion that appellant was not easily influenced, although a witness for appellant was not permitted to state his opinion of whether appellant was a person who could be easily influenced. In the light of the entire record, this single expression by the witness, Brown, could not have been of great effect, and hence we find no prejudicial error here.

Affirmed.

*Roberds, P. J.,* and *Lee, Kyle,* and *Arrington, JJ.,* concur.